Mr. LaCour, am I pronouncing that right? LaCour. LaCour, all right. And Mr. LaCour, you have reserved two minutes for rebuttal. We gave you ten minutes, so that means you've got eight minutes out of the gate. Just give me one second to get my stuff in order. All right, you may proceed. Good morning, and may it please the Court, Daniel LaCour on behalf of the appellant, Douglas Marine Corporation. If I may, I'd like to start with the mitigation argument, as I think it permeates the other issues on appeal. Three key facts show that sabotaging the sale of the custom boat had a concrete and non-speculative effect on appellee's damages. Here's the problem that I think I have with this whole mitigation argument, is that the contract claim in the complaint is under Section 2711, which is breach of contract and the remedy is return of monies paid. That's not about mitigation. That's simply about whatever you paid, you get back. Now, the monkey business that you assert went on between Mr. Salamone and a prospective buyer, that's potentially actionable, it would seem to me. It might be tortious interference with a contract or a business opportunity. But it's not clear to me why that is relevant to a contract claim for which the remedy is return of monies paid. Thank you, Judge. I appreciate the Court's point. The way we see it as relevant is that it's undisputed that Douglas Marine Corporation was paying back money as it came in to Mr. Salamone. They paid money upon the sale of the motors. This money was paid to build a custom boat. It's not that they had all this money sitting around. They had to buy materials. The remedy for the breach of contract is return of monies paid, right? That's a remedy, yes. Well, it's the remedy, isn't it? We believe it's a bit more complicated in this case. The plaintiffs were arguing throughout the trial that they owned various components of the boat. That's the position they argued to the jury. So the duties, I think, under Michigan law are a bit different when you're talking about items that are being sold by a third party that you're alleging that you own. But, yes, we acknowledge the provision in Michigan law under 2711. But the trial record demonstrates that Douglas Marine was trying to sell the boat so that it could do just that. It could pay back Mr. Salamone. The party stipulated that Mr. DeSantis wanted to buy the boat for $400,000. The party stipulated that the eventual buyer purchased it for $300,000. And both Mr. DeSantis and the eventual buyer, Mr. Shecker, wanted additional work done, Douglas Marine's cost, to effectuate the sale. So putting that all together, we submit there was non-speculative evidence that they failed to mitigate. And that should have at least been put to the jury as part of their decision. But mitigate what? What would they have been entitled to? Any more or less than $451,000 as a result? Well, the evidence showed at trial that Mr. Salamone had paid $501,500. And some of that- $50,000 was remitted back, didn't it? Exactly. And the point was, the party, Douglas Marine was in the process of doing all these sales when the suit was brought. I mean, they were wrapping things up at that point. These sums would have been remitted. They wouldn't have got a damages award. We submit an amount of $451,500 if these subsequent sales. I mean, they got $100,000 less for the boat on the DeSantis sale. Look, these are the problems that your client had with the boat. But it seems to me the loss to Salamone was what he's out of pocket for the non-delivery of the boat. That's his whole theory, and the jury agreed with it, right? As to whether the jury agreed with it, I don't know. Well, they returned a liability verdict against your client. They did on liability. Right. And so in any way, it seems to me that if the damage for that is recovery of monies paid, I don't see how that is mitigated or exacerbated by what Salamone subsequently did. Again, it might be tortious interference, but it's not clear to me why it is affecting what he's entitled to under the contract. Well, Your Honor, I think he frustrated just that, the return of the monies he paid to him. I mean, they didn't have those sums sitting around. They had to buy materials and things to construct the boat. But if he frustrated the monies coming to him, then he's the worse off for it, it would seem to me, because it means he doesn't get paid long. It's a longer period of time before he gets paid. And when we submit, that goes to his damages, Your Honor. I just want to move to the fundamental error argument. We think under Shade, this Court's decision in Shade, there can be no miscarriage of justice where a party strategically invites an error by a jury. We think that's what happened here, the closing statement. Notwithstanding the fact that on appeal they're saying the only damages are 451,500, you'll hear that number nowhere in the closing statement. Nowhere in the closing statement do they ask for a refund. But instead they say to the jury that Douglas Marine was paid more than it was entitled to be paid under the contract, and they should have the entire contract sum returned to them. So the jury, having heard that, heard mitigation evidence and all that, went back and did what it did. It was even more confusing than that, right? I mean, there was also a lot of talk in the summation about what Douglas Marine was able to recoup from the various pieces of the boat that were sold, and it was even more than the contract price, right? It was, Judge. And that was the argument, almost a disgorgement theory that the plaintiffs argued to the jury. And under Shade, we believe that these type of strategic errors that the district court recognized as a matter of law can amount to a miscarriage of justice, which is the standard for a fundamental error. What's your position on the Seventh Amendment? Well, under Liriano, for a sum to be added to a jury verdict to not amount to a violation of the reexamination clause needs to be discreet and disputed. Our contentions that was disputed, particularly with respect to mitigation, that argument was made throughout the case, including during the charging conference. With respect to the amounts, as I mentioned earlier, there were other issues here at play, particularly that the plaintiffs were arguing that they owned certain components of the boat. So our position, as we argued in our briefs, is that it wasn't such a straightforward calculation. It would need to follow the jury instructions, the accepted jury instructions by the Michigan court that we've submitted. So our position is that it's disputed and therefore doesn't fall under Liriano. And that no added to it was proper. That's right, Judge. That's our view. And we believe this should have been, you know, they didn't request a new trial, but we believe that was their only remedy after trial if they wanted to seek it. They didn't want another trial. They didn't ask for one. And we believe that's similar. There haven't been many opportunities by this court to look at Liriano since that decision. But there's two district court cases we emphasize in our brief, the Elsevier case and the Amtech case. Those are cases where it was a bridge too far for the district courts in those cases to apply the Liriano exception because the parties had fiercely disputed damages throughout the case. And even in Elsevier, there was only one party that even put in evidence on damages because of a discovery sanction. Notwithstanding that, the court said, still disputed, it's a bridge too far, there needs to be, the judge can't play fact finder, and it needs to go to the jury. In closing arguments, remind me what your position on damages was. Our position on damages was primarily a liability point. We were focused very largely on the fact that the rejection of the tender of the boat was not reasonable. But we did argue a more nuanced view of the damages, similar to what we said. Say what? Some of the delay in cost that they caused. We essentially said this all came after the fact, but you should consider it because this is part of the overall picture when you're talking about certain aspects of the boat that they owned. They're saying that they owned them. We disputed that. You weren't allowed to argue mitigation, right? We did not. And we didn't argue mitigation to the jury. But what you just described, so it sounds like mitigation. Well, we didn't say 451,500. We agree with that. And we didn't say he got a refund. They did not say that either. But if we were to find that as a matter of law under Michigan's contract law, that is the remedy. It is the amount paid minus any amount remitted. Would that alter the analysis as to whether this is a fundamental error? I don't know that that necessarily plays into the issue. I don't think that it necessarily would excuse inviting the error issue. I think if a party, notwithstanding the law being clear, if a party induces, makes a strategic decision and induces a jury to do a different calculation that's required under the law, we'd say that's not a miscarriage of justice. In fairness, they offered to stipulate to 451 in the charge conference before submissions, right? Yes. And so you or your client opposed that, which is then what led to sort of a confusing exchange where the district judge then said, well, I'm going to let you dazzle them with whatever you want to say about damages, which contributed to the confusion. But they did offer to stipulate. They did. But they didn't at any point in their submission ever say 451 is what the number ought to be. That's correct. All right. Well, you've reserved two minutes, unless there's any other questions. Thank you. We'll now hear from Mr. Lesser. Thank you very much, Your Honor. May it please the Court, Leonard Lesser for Mr. Salomon, the appellee. I'll start with the easiest part first. Counsel didn't even address it, so I think he appreciates the argument. Trying to appeal the denial of his Rule 60 motion was no abuse of discretion. That motion was filed five months after the jury verdict, three months after they opposed the motion under 1590. I don't think it should be given any credence by this Court. You're talking about the personal jurisdiction issue? Yeah, that's the Rule 60 motion that they filed five months after the verdict, saying, well, there was no jurisdiction. And there was no motion at any point. There was talk of a motion at the very beginning, no motion made, and no motion made even during or shortly before trial. Right, as the district court appellee concluded that they had every opportunity to do it, but they didn't do it, so there's no basis to challenge jurisdiction when they participated actively in litigation in the Northern District of New York. So let's get to fundamental error then, because it does seem like this case looks a little bit like shade, where the Court, our Court, found no fundamental error where the erroneous jury instruction was one that was offered, requested by the party arguing fundamental error after the fact. Right. So this is a situation where you could have gotten, I know that the judge, there was no stipulation on loss, and there was no directed verdict on loss being 451, but you could have in your summation said, and so the loss to my client was $451,000, that's 501 minus the 50 remitted, and then sit down. You didn't do that. Yeah, trial counsel did not do that. I don't mean you, but- Yeah, the record is what it is. There's no question, but as your Honor pointed out, during the charge conference, Counsel for Douglas conceded that plaintiff's damages under Michigan law was 451.50. No, I conceded, that's true. But why then isn't the fact that your client's lawyer gets up there and argues for something different than 451, that then you're stuck with what you got? I think, again, we're here on an abusive discretion standard of the district court. The district court was the trial judge. That was the standard in shade, too. 100%. The court said that on the facts in shade, no fundamental error because the party that was complaining of the error was contributed or was complicit. No question, but the trial judge here, the gatekeeper at trial, that was at the charge conference, presided over the jury instructions that she gave and the entire trial, made clear that her position, having had boots on the ground in the trenches at trial, was it was a fundamental error for the jury not to award, having found for liability, and all the five questions on liability, having not concluded that the damages were 51.5. You know, we don't know what went on during jury deliberations. We don't know how they got to the figure they do. But one of the things we know is that juries on issues like damages very frequently split the baby, and that's a feature of the system we are all wedded to. Why wasn't this case like that? Judge Parkey, you're 100% right. We don't know what goes on in the mind of the jury, and we're not here saying that the jury was polled or discussed what they did, but Judge D'Agostino did go through it, did figure out how they did it. She said, you said Judge D'Agostino went through it. What's the issue? She went through the calculations. In her decision granting the 59E motion, she went through the jury's damages award, went through what was presented, went through the evidence, her instructions, and came up with what she believed was the fundamental mistake that the jury made and how they made it. She then decided, based upon what she saw and what she did during the trial, that it was an erroneous decision based upon clear Michigan law, as Judge Sullivan pointed out, and corrected that, notwithstanding that trial counsel didn't say the words, we want 451-5 in the mathematical calculation. Is that precisely what the Seventh Amendment is intended to protect against? I'm sorry, Your Honor. I couldn't hear you. Is that entitled, that sort of approach in precisely what the Seventh Amendment is designed to guard against? Except for what Judge D'Agostino found here, because there was a discrete statute that was sued under that has a very clear prescription on remedies, namely what the buyer paid minus what he was returned back from the seller. That equals the damages. Well, there might be a question. But if we agree with you on that, that there was an error, that this could have been a stipulated, this could have been a directed verdict on damages is what you're saying, right? Yes. Okay. But it wasn't. But it wasn't. And you didn't ask for one, did you? The trial counsel didn't ask for a directed verdict. When I say you, I mean your client. There's no question about that. Okay. But the argument that then is made to the jury is counsel asked for a verdict in favor of the plaintiffs for the full contract balance that is due on the contract. That seems like different than 451. It seems like your client's trial counsel asked for something other than what it was prepared to stipulate. Trial counsel did not use the words Mr. Salamone paid 501, 500, and got back 50,000, and the balance owed is 451,500. There's no question that the trial counsel in summation didn't use those words. But they did use those words during the charge conference. And the charge conference doesn't matter. I think what we're talking about here is what happened. The argument, I think, is what happened in the summation enough to make this like shade where you don't get the benefit of a fundamental error because you helped create the situation that caused the error. This is not that because the judge was very clear in knowing what the law was under Michigan law. And notwithstanding what is arguably an amorphous closing argument by trial counsel, it was always maintained to the trial judge what the calculations was. And she did her best to get the parties to stipulate. And it was Douglas that refused to stipulate. Why was it necessary in summation for your client's trial counsel to say that Douglas Marine got 800 and something thousand dollars. That's what they received. That's even above the contract price. So implying that that was, I think as Mr. Corr said, a disgorgement theory. What was the point? Why would that be relevant to damages if 451 was what the law required? Certainly sitting here today, it would have been much better if trial counsel didn't do that and just said the mathematical calculation. But the upshot was that Douglas told the judge in no uncertain terms, and this is at record A784, quote, I don't think there's any basis for a verdict in damages that's over the amount that Salomon paid minus the amount he was paid back. And if the jury awarded more than the 41500, rest assured Douglas would have been objecting to that, making motions to vacate that award because it was outside the scope of what the jury could award. What Judge D'Agostino, here again on an abuse of discretion, considered everything, including counsel's closing statement, trial counsel's closing statement, everything that was done during the charge conference, everything that was presented to the jury, and the claim that was left that went to the jury on the breach of contract claim under Michigan law, and determined that the amount of damages was set by Michigan law, it was a discrete number, and it was fundamentally unfair for the plaintiff, notwithstanding what trial counsel may have said to the jury. It was unfair for the plaintiff not to be awarded what he was entitled to under Michigan law. Why was there no objection before the jury was excused? I have no answer to that, Your Honor, other than to say to you that there wasn't. The motion was filed within 30 days of the judgment, and the motion was made under the concept of Rule 5090. It's such an obvious and fundamental error. You would expect that the question would be submitted while the jury was still there and could correct its own error. I understand that, and I think when you read Judge D'Agostino's decision when she was confronted with the 59E motion, she took that into consideration and really scoped the entirety of the law on this, and determined because of the discrete nature of the Michigan contractual damages provision, that is what was fundamentally unfair about the damages award that the jury made based upon the mistake. She walked right into the Seventh Amendment problem. If she had simply done that and let the jury do its work like it was theoretically supposed to, we wouldn't have this added to the problem. But that's why when she rendered her 59E decision, she was very careful to give you, Your Honor, her analysis of why the Seventh Amendment wasn't violated. Again, because of what was said to her by counsel, the discrete nature of the Michigan damages that Mr. Salomon was entitled to recover based upon the case. That's why she made her decision that way. Very briefly on mitigation, I mean, the upshot is this, and I don't want to belabor the point because, Judge Sullivan, you raised it. Everything that they asserted about mitigation, Mr. Salomon allegedly told D'Agostino, DeAngelis, this, that, and the other thing. That was double hearsay. They didn't present Mr. DeSantis at trial. They presented their own witness. It doesn't even matter, though, does it? Right. It doesn't. Your point is that as a matter of Michigan law, mitigation is not relevant to a breach of contract under Section 2711. 100% correct, Your Honor. Okay. All right. Thank you. We'll hear now from Mr. LaCour for two minutes of rebuttal. Thank you, Judge. Just one point, actually, on the fundamental error issue. Going to Judge Parker's point, the jury sometimes do split the baby, and we know that. And that's the reason why it's so important under the waiver rule to make an objection before the jury is discharged. This is exactly the type of issue that that waiver rule was intended to protect against. If there was an objection timely made, Judge D'Agostino could have had the jury given additional instructions, clarified things, had them go back to the well, go back to the jury room, and reevaluate their verdict. Having not done that- I think your reason not to stipulate to 451 as the damage amount was that you wanted to argue mitigation, right? That was- well, as the jury and the charge conference was ongoing, it wasn't clear until the end that mitigation wasn't going to be charged. So we were weighing whether to stipulate to it. Once mitigation was clear, mitigation wasn't going to be charged, we decided not to. So that's right, Your Honor. It was one consideration. Another consideration was that we didn't want a large number communicated to the jury as what the damages were. As curative instructions, we don't believe would have been enough. So that was our position that we articulated to the district court judge. Any further questions? All right. Thank you both.  Thank you, Judge.